UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

OSCAR ODEL MEMBRENO-ARANA,

      Petitioner,

      v.                                                                CAUSE NO. 3:26cv642 DRL-SJF

BRIAN ENGLISH,

      Respondent.

## OPINION AND ORDER

Immigration detainee Oscar Odel Membreno-Arana filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in violation of the laws or Constitution of the United States. The respondent answered the petition, and Mr. Membreno-Arana filed a reply. The petition is ready to be decided.

Mr. Membreno-Arana is a Nicaraguan citizen who was previously removed pursuant to a removal order on December 17, 2008. On July 22, 2019, he was arrested after re-entering this country. United States Immigration and Customs Enforcement (ICE) reinstated the prior removal order and released him on an order of supervision. On December 7, 2023, he was convicted in Indiana of operating a vehicle while intoxicated and endangering a person. On March 26, 2024, ICE detained him again. On December 9, 2024, an immigration judge withheld his removal to Nicaragua, and ICE released him on an order of supervision on December 20, 2024. On April 13, 2026, local law enforcement arrested Mr. Membreno-Arana for domestic battery, and ICE took custody of him the following day. He is currently held at the Miami Correctional Facility.

In the response brief, the Warden represents that the government is currently identifying potential third countries for removal given the withholding of removal to Nicaragua. The Warden also includes a notice of revocation of release, dated April 15, 2026, in which the government notified Mr. Membreno-Arana that it had revoked his release because he violated a condition of his release due to his arrest for domestic battery and the victim's report.[1]

The respondent first argues that the court lacks subject matter jurisdiction over Mr. Membreno-Arana's habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). The court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For reasons given before, jurisdiction is secure insofar as this opinion goes. *See Liang, v. English*, No. 3:25cv1052, 2026 WL 835853, 1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.).

Turning to the merits, 8 U.S.C. § 1231(a)(6) gives the government the authority to detain a noncitizen while it effectuates a removal order. All noncitizens must be detained for a 90-day "removal period," which for Mr. Membreno-Arana ended in February 2025. *See* 8 U.S.C. §§ 1231(a)(1)(A), (a)(2)(A). Beyond this 90-day period, certain classes of noncitizens may be detained even longer—what the statute calls inadmissible aliens (under 8 U.S.C. § 1182), those who have violated their nonimmigrant status conditions (under 8 U.S.C. § 1227(a)(1)(C)), those who have committed certain crimes, such as aggravated felonies, drug trafficking, or illegal firearm offenses (under 8 U.S.C.

---

[1] Mr. Membreno-Arana also filed a motion to leave to file additional exhibits, which the court grants. ECF 11.

2

§ 1227(a)(2)), those removable for national security or foreign relations reasons (under 8 U.S.C. § 1227(a)(4)), and those whom the Attorney General determines to be a risk to the community or unlikely to comply with the order of removal. 8 U.S.C. § 1231(a)(6); *see also Johnson v. Arteaga-Martinez*, 596 U.S. 573, 579 (2022). These noncitizens "may be detained beyond the removal period" or released on conditions of supervision. 8 U.S.C. § 1231(a)(6).[2] The Warden relies on Section 1231(a)(6) as the basis for Mr. Membreno-Arana's current detention.

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," and "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To avoid a constitutional due process problem with § 1231(a)(6), and specific to a noncitizen who is present within this country and who is ordered removed, the law requires that his detention be limited to a reasonable time—namely "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also id.* at 682, 690-91.

Any § 1231(a)(6) detention of a present-but-ordered-removed noncitizen has this limitation, as it guards against the possibility that he might be indefinitely detained should his removal not be reasonably achievable. His indefinite detention would raise a

---

[2] For noncitizens who don't fall in these categories, if they are not removed during the 90-day removal period, they must be released, subject to conditions of supervision. 8 U.S.C. § 1231(a)(3).

serious constitutional problem. *Id.* at 690; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 378 (2005) (same). In short, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

The historic writ of habeas corpus grants a federal court the authority to review a noncitizen's detention and to decide independently whether "a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal." *Id.*; *see also* 28 U.S.C. § 2241(c)(3). "In answering that basic question, the habeas court must ask whether detention exceeds a period reasonably necessary to secure removal" and "should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. When removal proves reasonably foreseeable, the court can consider other factors (such as risk of crime) and often will deny habeas relief; whereas, when removal seems attenuated or unlikely, the court will order the individual's release, albeit conditioned on appropriate terms of supervision and the noncitizen's compliance with these terms. *See id.* at 699-700. After all, the choice isn't between detention and a noncitizen "living at large," but between detention and a noncitizen's supervised release on conditions that he cannot violate. *Id.* at 696.

The law materially defers these difficult judgments to the Executive Branch for a six-month period during which detention is considered presumptively reasonable to execute a removal order. *Id.* at 700-01. Even thereafter, the court listens with care when the government's "foreign policy judgments"—such as the status of repatriation negotiations— are implicated and otherwise affords "appropriate leeway when its

judgments rest upon foreign policy expertise." *Id.* at 700. A noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. But "once [he] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* (cleaned up); *see also Suarez Martinez*, 543 U.S. at 385-86.

The petitioner bears the initial burden, and the court sees no reason today to alter this. *See* 28 U.S.C. § 2241; *Zadvydas*, 533 U.S. at 700; *see also Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). Nor must the court engage the same constitutional dilemma that § 1231(a)(6) could present merely because this is a second period of detention and not his first. *See Zadvydas*, 533 U.S. at 690. The court may consider not just what led to his original detention and release years ago, to the extent still pertinent, but also what circumstances newly exist today. Despite the old adage, past isn't always prologue in this context, and just because removal couldn't occur before doesn't mean it can't reasonably occur today under renewed efforts. At the same time, nothing in § 1231(a)(6) and nothing in *Zadvydas* suggests that the mere passage of time erases everything about the initial showing to make it all irrelevant. *See also Vu v. English*, No. 3:25cv999, 2026 WL 194171, 11-14 (N.D. Ind. Jan. 26, 2026); *cf. Kem v. Noem*, No. 3:25cv997, 2026 WL 100566, 10-11 (N.D. Ind. Jan. 14, 2026).[3] After all, as the period of

---

[3] No one should read either *Vu* or *Kem* as indicating that an original showing always remains gospel or shifting the burden.

confinement grows, what qualifies as a reasonably foreseeable future conversely must shrink. *Id.* at 701.

To start, the operative removal order is the order withholding removal to Nicaragua issued on December 9, 2024. The government executed the initial removal order in 2008, and the order withholding removal from December 2024 supersedes the 2019 reinstatement of the initial removal order. Mr. Membreno-Arana's time in post-removal order detention since December 9, 2024 does not exceed six months.

Further, even if it had, Mr. Membreno-Arana has not provided good reason to believe that his removal will not occur within the reasonably foreseeable future. Though the parties agree that he cannot be removed to Nicaragua, the Warden represents that the government intends to remove him to a third country. The Warden's response is vague, but Mr. Membreno-Arena's immediate period of detention spans only two months. The court further observes the government could not have reasonably anticipated the criminal accusations against Mr. Membreno-Arana that served as the impetus for revoking his release, and the inability to anticipate his revocation reasonably explains this two-month delay. Because Mr. Membreno-Arana has not satisfied his preliminary burden of providing good reason to believe that his removal will not occur in the reasonably foreseeable future. Consequently, the court cannot grant habeas relief on this claim.

Mr. Membreno-Arana argues that he is entitled to habeas relief because his removal to a third country would be punitive and unconstitutional. However, "[removal] has been held to be not punishment, but an exercise of the plenary owner of Congress to

fix the conditions under which aliens are to be permitted to enter and remain in this country." *Flemming v. Nestor*, 363 U.S. 603, 616 (1960). Moreover, 8 U.S.C. § 1231(b)(2) expressly authorizes removal to third countries if removal to a country designated by the noncitizen or the noncitizen's country of origin or citizenship are not possible. Mr. Membreno-Arana concedes that he cannot be removed to Nicaragua, so this claim is not a basis for habeas relief.

Mr. Membreno-Arana also argues that he is entitled to habeas relief because the government revoked his release based on alleged criminal activity that did not result in formal criminal charges or conviction. However, he provides no authority or compelling argument for the proposition that formal criminal proceedings are required by constitutional or federal law for the government to revoke the release of a noncitizen subject to a final removal order. Absent a showing that the reason for his revocation contravenes federal law, this claim is not a basis for habeas relief.

Finally, Mr. Membreno-Arana argues that he is entitled to habeas relief because the government has not provided notice of the reasons for revoking his supervised release and has not provided an initial informal interview. "[F]ederal agencies are required to follow their own regulations." *Zelaya Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir. 2021) (citing *Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)); *see also Samirah v. Holder*, 627 F.3d 652, 664 (7th Cir. 2010) ("[R]ules promulgated by a federal agency, which regulate the rights and interests of others, are controlling upon the agency."). The federal regulations require the government to provide notice of the reasons for revoking supervised release "upon revocation" and require the government to provide an initial

informal interview "promptly" after a noncitizen's return to immigration custody to afford him an opportunity to respond to the reasons for revocation. 8 C.F.R. § 241.13(i)(3).

The Warden has filed and served a copy of the notice of reasons for revocation. Though Mr. Membreno-Arana denies that he received it upon his return to immigration custody, at minimum he has it now.[4] However, there is no indication in the record that the government has offered Mr. Membreno-Arana an initial informal interview after two months of detention. Nor does it appear that such an interview would be futile given that the criminal basis for his revocation has not been formally adjudicated. Consequently, the court will grant conditional habeas relief on this claim and order the government to provide Mr. Membreno-Arana an initial informal interview. When conducting the interview, the government should consider Mr. Membreno-Arana's representations that his native language is Spanish and that he does not speak or understand English. Only if the government, acting through designated officials, chooses to do nothing or fails to afford that process must he be released. *See Wilkinson v. Dotson*, 544 U.S. 74, 87 (2005) (Scalia, J., concurring) ("Conditional writs enable habeas courts to give [authorities] time to replace an invalid judgment with a valid one, and the consequence when they fail to do so is always release.").

For these reasons, the court:

(1) GRANTS the motion for leave to file exhibits [11];

---

[4] The court also observes that Mr. Membreno-Arana attached a copy of the notice of reasons for revocation to the habeas petition.

(2) DENIES the petition [2], except to CONDITIONALLY ORDER the Warden to release Oscar Odel Membreno-Arana by **June 29, 2026** only if he remains detained without having received an initial informal interview as required by 8 C.F.R. § 241.13(i)(3) by June 29, 2026 at 5:00 pm ET; and

(3) ORDERS the Warden to file a notice by **June 30, 2026**, alerting the court whether he received his initial informal interview as required or has been released.

SO ORDERED.

June 18, 2026                                          *s/ Damon R. Leichty*
                                                       Judge, United States District Court